IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CAROLYN L. WOMACK, )
)
Plaintiff, )
)
vs. ) Case No. 09-CV-748-TCK-FHM
)
ORCHIDS PAPER PRODUCTS )
COMPANY 401(K) SAVINGS )
PLAN, ORCHIDS PAPER PRODUCTS )
COMPANY, KEITH R. SCHROEDER, )
and ROBERT R. SNYDER, )
)
Defendants. )

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 34) and Defendants' Motion for Summary Judgment (Doc. 38).

I. **Factual Background**

Defendant Orchids Paper Products Company ("Orchids") is a Delaware corporation with a facility in Pryor, Oklahoma, that manufacturers consumer paper products. Defendant Robert Snyder ("Snyder") is the president and chief executive officer of Orchids. Defendant Keith Schroeder ("Schroeder") is the chief financial officer of Orchids. For approximately twenty-two years, Orchids has maintained a defined contribution retirement plan known as Orchids Paper Products Company 401(k) Savings Plan (the "Plan"). The Plan is a named Defendant. Under the terms of the Plan, Orchids is designated as the Plan's administrator and named fiduciary. Also under the terms of the Plan, Snyder and Schroeder are authorized to carry out fiduciary functions on behalf of Orchids. Neither Snyder nor Schroeder are designated as named fiduciaries or trustees under the Plan.

Plaintiff Carolyn Womack ("Plaintiff") began employment with Orchids in 1978 and was terminated in April 2008. During her employment with Orchids, Plaintiff participated in the Plan

and contributed twenty-five percent of her pre-tax compensation to her individual 401(k) account. Plaintiff was seventy years old at the time of her termination. At Orchids' request, Plaintiff served as a contract consultant after her termination and trained her replacement for four months, until approximately August 2008. Plaintiff could not contribute compensation to her account while she was employed as a contract consultant.

In April 2008, following Plaintiff's termination but during her employment as a consultant, Orchids transferred management of the Plan's investments from Principal Financial Group ("Principal") to Fidelity Management Trust Company ("Fidelity"). Fidelity is designated as the Plan's trustee in the Plan instrument. As part of the transfer from Principal to Fidelity, a series of informational meetings was held for Orchids' employees. During these meetings, representatives of Fidelity and Morgan Stanley Smith Barney ("Smith Barney"), Orchids' third-party defined contributions 401(k) consultant, gave presentations about the Plan's new investment options under Fidelity's management. Plaintiff attended one of these informational meetings on April 24, 2008. During the meeting attended by Plaintiff, a Fidelity representative explained the investment options available under the Plan. Participants could direct Fidelity to invest the funds in their personal accounts into one of several available investment funds, including the Fidelity Advisor Stable Value Portfolio II ("Stable Fund"). Participants who did not select a specific investment fund would have their existing funds rolled into a Fidelity Advisor Freedom Fund ("Default Fund"). Plaintiff met individually with Fidelity and/or Smith Barney representatives following the informational meeting she attended.

Sometime following the informational meeting, Plaintiff completed Fidelity's Designation of Beneficiary Form ("DOB Form"), identifying her beneficiaries and providing instructions

2

regarding the proper distribution of her retirement funds. Under the primary and contingent beneficiary sections of her DOB Form, Plaintiff twice wrote "see attached," referring to an attached one-page spreadsheet that Plaintiff had created to further explain her beneficiary distribution instructions. In addition, Plaintiff completed a Fidelity Enrollment Form ("Enrollment Form"), in which she indicated her election to invest one-hundred percent of the funds in her individual plan account in the Stable Fund. Plaintiff and other Plan participants were instructed that they could submit their enrollment forms either to Orchids or Fidelity.

Sometime on or after April 28, 2008, Plaintiff delivered a five-page set of documents, which included her DOB Form and Enrollment Form, to Margie King ("King"), Orchids' Accounts Receivable and Credit Manager. King was the individual selected by Orchids' management to collect DOB and enrollment forms from Plan participants. Plaintiffs' documents were paper-clipped together, with Plaintiff's DOB Form on top, followed by Plaintiff's one-page beneficiary spreadsheet, and then Plaintiff's Enrollment Form. Upon receipt of Plaintiff's documents, King reviewed Plaintiff's DOB Form and saw the note stating "see attached." King flipped the first page over and saw the second page, which was Plaintiff's self-made beneficiary spreadsheet. King assumed that all of the attached pages related to Plaintiff's beneficiary designation instructions. In accordance with the usual procedure for handling DOB Forms, King placed Plaintiff's DOB Form and attached documents in a stack to be filed. A file clerk then filed Plaintiff's DOB Form and Enrollment Form in Plaintiff's individual participant file, which was located at the Orchids facility. Had King seen Plaintiff's Enrollment Form, she would have transmitted it to Fidelity, as she did other enrollment forms.

Having never received Plaintiff's Enrollment Form, in which Plaintiff directed funds in her individual Plan account to be invested in the Stable Fund, Fidelity invested such funds in the Default Fund. Plaintiff first accessed her retirement account via website in late November 2008. At this time, she discovered that her funds had been invested in the Default Fund rather than the Stable Fund and that her retirement savings had decreased by approximately $100,000. In December 2008, Plaintiff directed Fidelity to reinvest the funds in her personal account into the Stable Fund. Plaintiff hired counsel and sent letters to Orchids requesting that it refund certain amounts to her individual Plan account. Orchids denied all such requests.

For purposes of transferring investment management from Principal to Fidelity, Schroeder and/or Snyder assigned King the following duties: scheduling and organizing the informational meetings for employee Plan participants; tracking/confirming attendance at the informational meetings; collecting DOB Forms from all Plan participants; and confirming that such forms were properly completed. King assigned a subordinate employee to file the completed DOB Forms. Additionally, for those Plan participants who gave her their completed enrollment forms, King was assigned the duty of transmitting such forms to Fidelity for processing. DOB Forms were not submitted to Fidelity; instead, these forms were maintained in individual Plan participants' files by Orchids. King ensured that she had received DOB Forms from each Plan participant by maintaining a checklist and then assigning clerks to file the forms in individual participant files. King was not specifically "trained" in any of these duties, and the only oversight she received was an informal inquiry from Schroeder regarding how the conversion process was going.

Most Plan participants completed the enrollment process online or via the toll-free number identified in the Fidelity informational brochure, submitted their completed enrollment forms

4

directly to Fidelity, or did nothing and allowed their funds to roll into the Default Fund. Of approximately one-hundred fifty participants in the Plan, only twenty submitted their enrollment forms directly to Orchids. Plaintiff was the only Plan participant to attach her Enrollment Form to the back of other documents when she submitted it to Orchids.

In her only cause of action, Plaintiff alleges that the Plan, Orchids, Schroeder, and Snyder all breached fiduciary obligations arising under the Employee Retirement Income Security Act ("ERISA"). The Court denied Defendants' motions to dismiss. (*See* Docs. 21, 22, 33.) Following discovery, all Defendants moved for summary judgment, and Plaintiff moved for summary adjudication on the issue of liability. The matter is set for a non-jury trial.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986). The relevant legal standard does not change where the parties file cross motions for summary judgment, and each party has the burden of establishing

the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

## III. ERISA Breach of Fiduciary Duty

In relevant part, ERISA provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter *shall be personally liable to make good to such plan any losses to the plan resulting from each such breach*, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C.A. § 1109(a) ("§ 1109(a)") (emphasis added). Civil actions to impose liability for § 1109(a) violations may be brought "by the Secretary, or by a participant, beneficiary or fiduciary." 29 U.S.C. § 1132(a)(2) ("§ 1132(a)(2)"); *see also Holdeman v. Devine*, 572 F.3d 1190, 1193 (10th Cir. 2009). The Supreme Court has held that, in the context of defined contribution plans, § 1132(a)(2) authorizes recovery sought by individual participants for fiduciary breaches "that impair the value of plan assets *in a participant's individual account*." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (emphasis added). Prior to *LaRue,* a fiduciary breach was only cognizable under § 1132(a)(2) if it harmed the "entire plan." *See id.* at 251, 255-56 (explaining prior holdings but departing from them in context of defined contribution plans) ("For defined contribution plans, however, fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive.").[1]

---

[1] In *LaRue*, the Supreme Court recognized that defined contribution plans, rather than defined benefit plans, "dominate the retirement plan scene today." *Id.* at 255. The Court clarified that its prior decisions' references to protecting the "entire plan," while still applicable in the defined benefit context, were simply "beside the point in the defined contribution context." *Id.* at 256. Thus, a participant in an ERISA defined contribution plan may bring a cause of

In order to prevail on a claim for breach of fiduciary duty under ERISA and recover funds to her individual Plan account, Plaintiff must prove that the relevant Defendant (1) was a fiduciary, (2) was acting within its capacity as a fiduciary at the time of the alleged breach, and (3) breached its fiduciary duty. *See Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 347 (S.D.N.Y. 2010). In addition, "there must be a showing of some causal link between the alleged breach and the loss plaintiff seeks to recover." *See Holdeman*, 572 F.3d at 1193.

A. Fiduciary Status/Acting in Capacity as Fiduciary

1. Defendant Plan

The Plan itself cannot be held liable for breach of fiduciary duties pursuant to § 1132(a)(2) because the Plan cannot be a fiduciary of itself. *Fotz v. U.S. News & World Report, Inc.*, 613 F. Supp. 634, 641 (D.D.C. 1985) (explaining that only non-plan defendants were "eligible for fiduciary roles" and that "[t]he Plan, of course, cannot be a fiduciary of itself"); *Kaliszewski v. Sheet Metal Workers' Nat'l Pension*, No. 03-216E, 2005 WL 2297309, at *3 (W.D. Pa. July 19, 2005) ("A breach of fiduciary claim cannot be maintained against the Fund for . . . the Fund does not perform any function that meets the definition of a fiduciary with respect to itself."). Plaintiff's cited authority is not persuasive because it arises in the context of 29 U.S.C. § 1132(a)(1)(B), which

---

action for breach of fiduciary duty, even when such breach only reduces plan assets payable to "persons tied to particular individual accounts." *Id.* at 256 (reversing Fourth Circuit's decision that § 1132(a)(2) provides remedies only for entire plans and not for individual accounts within a plan). According to one commentator, *LaRue* "provides a new remedy that is potentially available for millions of employees who participate in defined contribution plans." Sharon Reece, *The Times Are 'A-Changing' Towards a Living Statute Jurisprudence in ERISA*, 40 U. Mem. L. Rev. 55, 100 (2009) (also concluding that "[t]he *LaRue* decision signaled a new approach to interpreting the relief available under ERISA's civil enforcement provisions to adapt to the changing landscape of retirement plans").

provides a basis for recovering benefits without regard to a defendant's fiduciary status. *See Fotz*, 613 F. Supp. at 641 (explaining that suit against non-fiduciary plan was permissible under § 1132(a)(1)(B) but not § 1132(a)(2)). Therefore, the Plan does not hold fiduciary status and is entitled to judgment as a matter of law.

2. Defendant Orchids

Orchids is the named fiduciary in the Plan. *See* 11 U.S.C. § 1102(a)(1) (requiring that every employee benefit plan "provide for one or more named fiduciaries who . . . shall have authority to control and manage the operation and administration of the plan"); *In re Luna*, 406 F.3d 1192, 1201 (10th Cir. 2005) (explaining that every employee benefit plan must appoint one or more "named fiduciaries" and that others may also acquire fiduciary status if they exercise certain fiduciary functions). Orchids is also the Plan administrator, which is generally deemed a fiduciary based on its exercise of discretionary authority or discretionary responsibility in the administration of the Plan. *See* 29 C.F.R. § 2509.75-8 at D-3 (explaining that "[s]ome offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) of the Act" and that "a plan administrator or a trustee of a plan must, by the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of section 3(21)(A)(iii) of the Act"). Based on Orchids' status as a named fiduciary and Plan administrator, Orchids generally holds fiduciary status with respect to the Plan.[2]

---

[2] ERISA does not limit fiduciary status to individuals, *see* 29 U.S.C. § 1002(9) (definition of "person" includes corporation), and expressly permits employee benefit plans to designate a corporation as a named fiduciary, *see id.* § 1102(a)(2). *See generally Confer v. Custom Eng'g Co.*, 952 F.2d 34, 36-37 (3d Cir. 1991) (explaining corporate fiduciary status under ERISA).

Defendants contend that, although Orchids holds fiduciary status, Orchids was not functioning in its fiduciary capacity when it – by and through King[3] – failed to transmit Plaintiff's Enrollment Form to Fidelity. The statutory definition of fiduciary provides in relevant part:

> [A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (emphasis added). Based on this definition and particularly the words "to the extent," courts have held that formal titles of fiduciary or non-fiduciary are not controlling and that "[w]hether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987); *Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross and Blue Shield of Kan., Inc.*, 361 F. Supp. 2d 1280, 1287 (D. Kan. 2005). Thus, a court must analyze whether Orchids was functioning in a fiduciary capacity at the time of the alleged breach – namely, when it failed to transmit Plaintiff's Enrollment Form to Fidelity.

The Court holds that Orchids – by and through King – was functioning in its capacity as a fiduciary when performing the omission giving rise to the alleged breach. Failing to notify Fidelity of Plaintiff's investment directions "falls squarely" under fiduciary obligations set forth in 29 U.S.C. § 1002(21)(A). *See LaRue*, 552 U.S. at 253 (stating, in dicta, that an employer/plan administrator's alleged misconduct of failing to carry out a participant's investment directions "falls squarely" within a fiduciary's statutory duties, which "relate to the proper management, administration, and

---

[3] King is not a named Defendant, and Plaintiff does not allege that King individually holds fiduciary status.

9

investment of fund assets") (internal quotations omitted).[4]  Orchids, as named Plan fiduciary and administrator, directed participants to submit enrollment forms containing investment directions to it or Fidelity.  Approximately twenty employees gave their Enrollment Form to Orchids, and Orchids assumed fiduciary obligations with respect to the proper handling of the investment directions indicated on these individuals' enrollment forms.  Orchids functioned in its fiduciary capacity because it was, according to the Supreme Court's decision in *LaRue*, exercising authority or control over the proper investment of fund assets.

Orchids seeks to distance itself from *LaRue* by arguing that Fidelity – and not it – was ultimately responsible for investing Plaintiff's funds in the Stable Fund.  However, this is a distinction without a difference in this case.  Orchids gave its employees the option of providing it or Fidelity with their "investment directions."  Plaintiff opted to submit hers to Orchids, and Orchids assumed a fiduciary responsibility for ensuring Fidelity was able to follow Plaintiff's investment directions.  Orchids should not be able to avoid *LaRue* by characterizing its failure as a mere "failure to forward a document" as opposed to a "failure to carry out investment directions."  Instead, Orchids' conduct is, in the Court's view, sufficiently similar to the failures discussed by the Supreme Court in *LaRue* to allow fiduciary obligations to attach.

Contrary to Orchids' arguments, this is not a case in which Orchids was wearing its "employer hat" rather than its "plan administrator hat" at the time of the alleged breach.  *See In re*

---

[4] In *LaRue,* the Supreme Court assumed that a breach of fiduciary obligations had occurred.  *See id.* at 252-53 ("As the case comes to us we must assume that respondents breached fiduciary obligations defined in § 409(a), and that those breaches had an adverse impact on the value of the plan assets in petitioner's individual account.").  Its holding was therefore limited to the availability of an ERISA remedy in such a situation.  Nonetheless, the Supreme Court's dicta regarding a failure to follow a participant's investment directions falling "squarely within" ERISA's fiduciary obligations is highly persuasive to this Court.

*Luna,* 406 F.3d at 1207 (reasoning, in part, that employers did not hold fiduciary status because decision to use funds to pay business expenses rather than to make contributions to fund "was a business decision, not a breach of fiduciary duty"); *Sengpiel v. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir. 1998) (explaining that "courts have typically distinguished between employer action that constitutes 'managing' or 'administering' a plan and those that are said to constitute merely 'business decisions' that have an effect on an ERISA plan") (holding that decision to transfer welfare benefits was a business decision more analogous to amending or terminating a plan than to administering or managing a plan); *see also Via Christi Reg'l Med. Ctr.*, 361 F. Supp. 2d at 1287 (explaining that ERISA permits employers to wear "two hats" and that they assume fiduciary status only when they function in their capacity as plan administrators and not when they conduct business that is not regulated by ERISA). In this case, Orchids' alleged breach occurred during the performance of a task directly related to its roles as fiduciary and administrator of the Plan, rather than during a task related to the running of its manufacturing business.

Nor is this a case in which the alleged breach was committed "within a framework of policies, interpretations, rules, practices and procedures made by other persons." *See* 29 C.F.R. § 2509.75-8 (explaining that certain "ministerial" tasks listed in the regulation, when performed within a framework of discretionary policies established by another entity, do not give rise to fiduciary liability); *see generally Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (explaining that third-party administrators are non-fiduciaries if they perform only ministerial functions listed in 29 C.F.R. § 2509.75-8); James Lockhart, *When Is Third-Party Administrator or Other Person or Entity Providing Administrative or Investment Services to ERISA Plan Fiduciary Under § 3(21)(a)(i) or (iii) of ERISA?*, 175 ALR Fed. 129, at § 5 (2002) (explaining

11

that third-party administrators hired to perform purely administrative services are generally not ERISA fiduciaries where their role is limited to performing tasks of a ministerial nature). Here, Orchids is the named plan fiduciary rather than a third party hired to perform purely ministerial tasks. Orchids instructed participants as to the proper enrollment procedure, and Orchids itself was carrying out this procedure at the time of the alleged breach. Further, although the failure in this case flowed from the non-performance of an administrative task, rather than from a discretionary decision to purposefully disregard Plaintiff's investment directions, the Supreme Court's decision in *LaRue* suggests that such a failure implicates fiduciary obligations to properly manage fund assets. *See LaRue*, 552 U.S. at 253 (holding that misconduct alleged – failing to carry out a participant's investment directions – "falls squarely within" the "principal statutory duties imposed on fiduciaries"); *see also* 29 U.S.C. § 1002(21)(A)(i) (imposing fiduciary status to extent entity exercises "*any* authority or control respecting *management* or disposition of [plan] assets") (emphasis added). Therefore, based on *LaRue* and its implications, the Court holds that Orchids – by and through King – was performing fiduciary functions at the time of the alleged breach.[5]

        3.        Defendants Schroeder and Snyder

Plaintiff alleges that Schroeder and Snyder breached fiduciary duties based on their failure to properly train and/or supervise King, including their failure to provide written protocols for

---

[5] The Court located two cases classifying the task of processing enrollment forms as "a ministerial" function that does not implicate fiduciary obligations. *See New Life Homecare, Inc. v. Blue Cross of Northeastern Penn.*, No. 06-CV-2485, 2008 WL 423837, at *10 (M.D. Pa. Feb. 14, 2008); *Andre v. Salem Tech. Servs.*, 797 F. Supp. 1416, 1425 (N.D. Ill. 1992) (holding that fiduciary obligations did not attach to the "the ministerial responsibility of doing the paperwork necessary" to get the plaintiff enrolled in a welfare benefits plan). However, such cases were decided before the Supreme Court's decision in *LaRue* and are therefore less persuasive than they otherwise would have been.

collecting enrollment forms. *See generally Schmidt v. Sheet Metal Workers Nat'l Pension Fund*, 128 F.3d 541, 547 (3d Cir. 1997) (explaining that fiduciaries may breach duties by participating directly in the alleged misconduct or by failing to properly train or supervise lower-level employee that engaged in the alleged misconduct).

Schroeder and Snyder are identified in the Plan as the two individuals "designated by [Orchids] to act as Administrator for the Plan or to whom authority has been delegated by such Administrator." (Plan, Ex. 1 to Def.'s Mot. for Summ. J., at OPPC.0126.)[6] Under the terms of the Plan, they are "authorized to provide instructions to [Fidelity] regarding the Plan" and "authorized to advise Fidelity on all plan administrative matters." (*Id.*) Defendants argue that Schroeder and Snyder were not functioning in their roles as fiduciaries in connection with their alleged breach. (*See* Def.'s Mot. for Summ. J. 14) ("Because King was not a fiduciary under the Plan, and processing enrollment forms was not a fiduciary act, it is unclear how Schroeder and Snyder, who were not the named administrators or trustees under the Plan, had a fiduciary duty to train or oversee King, or to prepare written policies and procedures for processing Enrollment Forms.").)

First, the Court holds that Schroeder and Snyder hold fiduciary status based on their "discretionary authority or discretionary responsibility in the administration" of the Plan, as expressly designated in the Plan. *See* 29 U.S.C. § 1002(21)(A)(iii); *cf. Confer*, 952 F.3d at 38 (corporate officers were not ERISA fiduciaries because, *inter alia*, there was no indication that named fiduciary had delegated any fiduciary responsibility to such officers). Second, for similar

---

[6] *See* 29 U.S.C. § 1105(c)(1)(B) (named fiduciaries may designate certain individuals to carry out fiduciary responsibilities, other than trustee responsibilities); 29 C.F.R. § 2509.75-5 at FR-3 (explaining that plan instrument naming corporation as fiduciary "should provide for designation by the corporation of specific individuals or other persons to carry out specified fiduciary obligations under the plan").

13

reasons explained above with respect to Orchids and based on the Supreme Court's decision in *LaRue*, the Court concludes that taking actions or failing to take actions aimed at ensuring participant's investment directions are properly carried out constitute fiduciary functions. Therefore, Schroeder and Snyder – in allegedly failing to supervise or train King in properly processing participants' enrollment forms – were functioning in their capacity as Plan fiduciaries.

B. Breach

"Once deemed a fiduciary, either by express designation in the plan documents or the assumption of fiduciary obligations . . ., the fiduciary becomes subject to ERISA's statutory duties." *In re Luna*, 406 F.3d at 1201. Relevant to this case, ERISA provides the following duty of care:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

29 U.S.C. § 1104(a)(1)(B).[7]

As explained above, the Supreme Court in *LaRue* suggested that failure to carry out a participant's direction to make certain changes to the investments in his individual plan account implicated fiduciary obligations. *See LaRue*, 552 U.S. at 253. However, the Court "assume[d] that [the alleged fiduciaries] breached fiduciary obligations" and therefore did not discuss what *types* of failures to follow investment directions by a plan participant breach the standard of care set forth in § 1104(a)(1)(B). The Court in *LaRue* simply stated that the employer/administrator "never carried

---

[7] ERISA also imposes a duty of loyalty, which generally prohibits self-dealing. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 143 n.10 (1985) (explaining separate duties of loyalty and care). Plaintiff does not allege any self-dealing, and the duty of loyalty is not at issue.

14

out" two changes designated by the plaintiff, without explaining the reasons for such failure.[8] Because *LaRue* was the first case to allow an individual participant to sue for breach of fiduciary duty based on depletion of her individual 401(k) account, there is little case law discussing misconduct of the type alleged here. *Id.* However, attempting to follow the Supreme Court's guidance in *LaRue*, it seems the proper question is whether a fiduciary has acted with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man" would use in ensuring that a defined contribution plan participant's investment directions are properly carried out. *See* 29 U.S.C. § 1104(a)(1)(B).

    1.    Defendant Orchids

The Court concludes that the undisputed conduct at issue – namely, King's failure to look through the entire set of documents submitted by Plaintiff, resulting in a failure to transmit Plaintiff's investment directions –[9] does not satisfy the prudent man standard set forth above. Plaintiff's Enrollment Form began on the third page of a five-page set of papers. This was not an overly burdensome amount of paperwork for King to review. King admitted that, had she reviewed

---

[8] The district court decision in *LaRue* was decided on a motion for judgment on the pleadings. Such decision merely states that the plaintiff alleged that the defendants "failed to invest his money as he directed, and as a result his interest in the plan was depleted by approximately $150,000." *LaRue v. DeWolff, Boberg, & Assocs., Inc.*, No. 2:04-1747-18, 2005 WL 5568764, at *1 (D.S.C. June 23, 2005). The Court did not locate any further opinions in *LaRue*, following remand from the Supreme Court, that further explained the nature of the conduct at issue.

[9] Plaintiff contends that King or someone else at Orchids necessarily saw her Enrollment Form because "25%" is hand-written on the form as the amount of contribution, and she left that portion of her typed Enrollment Form blank. King, however, denies ever seeing the Enrollment Form or making any notations thereon. Even construing all facts in favor of Orchids and assuming King did not see the Enrollment Form, the Court finds that Plaintiff is entitled to summary adjudication on the issue of breach of fiduciary duty. There is therefore no need for resolution of this disputed fact.

the entire set of papers, she would have seen the Enrollment Form. King was aware that Plaintiff attended informational meetings during the conversion process and met with Fidelity representatives following such meeting. King was the only person at Orchids responsible for processing Enrollment Forms submitted to Orchids. The Court finds, based on the undisputed facts, that a prudent person in King's position would have looked through the entire paper-clipped set of papers submitted by Plaintiff, discovered Plaintiff's Enrollment Form, and transmitted the form to Fidelity. Defendant's contention that Plaintiff's "see attached" notation on the DOB Form was overly confusing or somehow alleviated King's burden to review all submitted documents is unavailing. A prudent fiduciary in similar circumstances would have reviewed all pages of Plaintiff's submission, regardless of any notations made by Plaintiff on the front page of such submission. Because the undisputed facts indicate that a prudent person under similar circumstances would have exercised a greater degree of care in handling Plaintiff's investment directions regarding her defined contribution plan, a breach of ERISA's fiduciary duty of care occurred as a matter of law. Stated simply, King did not carry out the important duty assigned to her by Orchids with the skill, care, and diligence that would have been exercised by a prudent person under similar circumstances. Therefore, the Court holds that Orchids breached its fiduciary duty to Plaintiff as a matter of law.

        2.        Defendants Schroeder and Snyder

Plaintiff contends that Schroeder and Snyder breached their fiduciary duties by failing to properly train or supervise King and/or failing to implement policies and procedures to ensure that King completed her assigned task of processing enrollment forms. Based on the undisputed facts in the record regarding Schroeder and Snyder's conduct, the Court concludes that they did not deviate from the relevant standard of care in training King, supervising King, or overseeing King

16

during the enrollment process. Instead, prudent managers under similar circumstances would have taken similar actions – namely, assigning the task of collecting forms to an experienced, managerial employee and then inquiring as to how the process was going. King held the position of Accounts Receivable and Credit Manager and had been in such position for five years. Plaintiff was the first employee to identify a problem with King's handling of her investment directions, and there is no evidence that this was a recurring problem that Schroeder or Snyder should have investigated or remedied prior to King's omission to transmit Plaintiff's form.[10]

Further, the process set up by Schroeder and Snyder successfully brought Plaintiff's Enrollment Form into the hands of King. There is no evidence that the decisions made by Schroeder and Snyder – as opposed to those made by King – contributed to the specific omission that occurred in this case. Although Plaintiff contends that Schroeder and Snyder should have required some type of "checklist" for enrollment forms, similar to the checklist King used for ensuring receipt of all DOB forms, such a checklist would have served no purpose. Employees were not required to turn in an enrollment form at all, and most employees who did submit enrollment forms submitted them directly to Fidelity. Thus, King was not looking for every employee's enrollment form, and a "checklist" would have been of little use in preventing the omission that occurred. The Court therefore concludes that Schroeder and Snyder fulfilled their duty of care owed to those Plan participants who elected to submit their Enrollment Forms to Orchids, that they have not breached any individual fiduciary obligations, and that they are entitled to judgment as a matter of law. *See*

---

[10] In her brief, Plaintiff also discusses Schroeder and Snyder's conduct following Plaintiff's discovery of King's omission, such as failing to check for other similar mistakes. However, such conduct is not relevant in determining whether these managers breached obligations flowing to Plaintiff, and such conduct could not have contributed to Plaintiff's alleged damages.

*Christensen v. Qwest Pension Plan*, 462 F.3d 913, 918 (8th Cir. 2006) (affirming grant of summary judgment in favor of fiduciaries because the plaintiff failed to prove that fiduciaries failed to exercise care in monitoring accuracy of a certain automated system or that the error causing faulty benefits estimate was a recurring problem).

    C.        Causation/Damages

In order for Plaintiff to prevail on an ERISA breach of fiduciary duty claim, there must be a showing of some causal link between the alleged breach and the loss Plaintiff seeks to recover. *See Holdeman*, 572 F.3d at 1193. There is a circuit split on which party bears the burden of proving causation of damages after a breach of fiduciary duty is established. *See id.* at 1195 n.1 (discussing circuit split). The Tenth Circuit has declined, however, to outline the proper evidentiary framework for such a determination. *See id.* at 1195 ("Even if we assume that plaintiffs established a prima facie case and that the district court should have shifted the burden of persuasion to [the defendant] to disprove causation, as plaintiff asserts, the district court's factual findings of no causation between any fiduciary breach and any loss persuade us that any burden-shifting error by the district court was irrelevant").

For purposes of this Order only, the Court assumes that Plaintiff bears the burden of proving that the loss she seeks to recover was caused by Orchids' breach.[11] However, Plaintiff has not moved for summary judgment as to any set amount of damages. Instead, Plaintiff requests that the Court enter partial summary adjudication in her favor on the issue of breach of fiduciary duty and determine what amount of damages were caused by such breach during a bench trial. Thus, Plaintiff

---

[11] Having granted judgment in favor of the Plan, Schroeder, and Snyder, the Court limits its causation discussion to Orchids.

has not, in her motion for partial summary adjudication, attempted to link any specific damages amount to Defendants' conduct.

In its own motion, Orchids argues that, assuming it has breached fiduciary duties, it is nonetheless entitled to summary judgment because "[i]t was Plaintiff's own act of attaching her Enrollment Form to the back fo her [DOB] Form, accompanied by the misleading note indicating that the other documents were attachments to her [DOB] Form, that resulted in Plaintiff's Enrollment Form . . . not being submitted to Fidelity." (Defs.' Mot. for Summ. J. 18.) Based on the Court's finding that Orchids breached its fiduciary duty as a matter of law, the Court easily rejects this argument. The manner in which Plaintiff submitted the Enrollment Form was not so burdensome, confusing, or misleading that Orchids was somehow alleviated of its fiduciary duty to thoroughly review Plaintiff's entire submission. Plaintiff's act of writing "see attached" on the DOB Form, the first page of a five-page set of documents, cannot be deemed the "proximate cause" of any losses Plaintiff suffered. In other words, the Court rejects the notion that it was Plaintiff's method of submission – rather than Orchids' conduct – that caused the Enrollment Form to be filed instead of transmitted to Fidelity. Therefore, Orchids is not entitled to summary judgment based on its argument that Plaintiff's own actions were the proximate cause of any losses she suffered.

Orchids also argues that, assuming it has breached fiduciary duties and assuming such breaches caused Plaintiff damages, such damages must be limited to the amount of $26,220.23. Orchids argues:

> The undisputed facts establish that, had Plaintiff not made the decision to reinvest her funds [in December 2008, after learning of Orchids' omission], and instead left her funds in the [Default Fund], as of August 20, 2010, Plaintiff would have realized a loss of only $26,220.23, the difference between the value of Plaintiff's funds had they initially been invested according to her instructions ($371,487.41) and the value

19

of Plaintiff's funds had she not reinvested her funds in December 2008 ($345,267.18).

(Def.'s Mot. for Summ. J. 19.) In a similar vein, Orchids argues that Plaintiff failed to mitigate her damages by failing to check the status of her individual Plan account prior to November 2008, which was approximately six months after the breach. Neither of these arguments, however, entitle Orchids to summary judgment. Instead, such arguments go to the amount of damages, which will be determined by the Court in a non-jury trial.

## IV. Conclusion

Plaintiff's Motion for Partial Summary Judgment (Doc. 34) is GRANTED as to Orchids and DENIED as to all other Defendants. Defendants' Motion for Summary Judgment (Doc. 38) is GRANTED as to the Plan, Schroeder, and Snyder, and DENIED as to Orchids.

**SO ORDERED this 15th day of February, 2011.**

_/s/ Terence C. Kern_
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**